IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

**NIGHT BOX**
**FILED**

JUN 23 1998

CARLOS JUENKE
CLERK, USDC / SDFL / MIA

```
-----------------------------------§
BRISTOL HOTEL ASSET CO., et al.     §
                Plaintiffs          §
                                    §
-----------------------------------§
      v.                            §  CIVIL ACTION NO. 97-2240-CIV-MORENO
                                    §
Allianz Insurance Co., et al.       §
                Defendants          §  MAGISTRATE JUDGE DUBÉ
-----------------------------------§
```

## STIPULATION AND AGREEMENT OF SETTLEMENT

This stipulation and agreement of settlement (the "Stipulation", "Agreement" or "Settlement Agreement") dated as of June 22, 1998 is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Court, this Stipulation is entered into among the Plaintiffs, as hereinafter defined, the Hartford Settlement Sub-Class Representatives, as hereinafter defined, the Settlement Class, as hereinafter defined, the Hartford Settlement Sub-Class, as hereinafter defined, and Hartford Fire Insurance Company, Nutmeg Insurance Company, the Hartford Financial Services Group, Inc., First State Insurance Company, Hartford Accident & Indemnity Company, Hartford Casualty Insurance Company, Hartford Insurance Company of Alabama, Hartford Insurance Company of Connecticut, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast, Hartford Lloyds Insurance Company, Hartford Specialty Company, Hartford Underwriters Insurance Company, New England

H_220460(SS_S01·DOC)

I

Insurance Company, New England Reinsurance Corporation, New York Underwriters Insurance Company, Pacific Insurance Company, Ltd., Property & Casualty Insurance Company of Hartford, Sentinel Insurance Company, Ltd., Trumbull Insurance Company, Hartford Specialty Risk Services, Specialty Risk Services, Inc., Trumbull Services, Inc. and Twin City Fire Insurance Company (collectively, the "Hartford Defendants"), by and through their respective counsel.

WHEREAS:

A.   Plaintiffs have filed the following actions (collectively, the "Actions") in the following courts:

1.   Foodarama Supermarkets, Inc., et al. v. Allianz Insurance Co., et al., Docket No. L-3556-97 (Superior Court of New Jersey, Law Division: Morris County) (the "New Jersey Action");

2.   Bristol Hotel Asset Co., et al. v. The Aetna Casualty and Surety Co., et al., Civil Action No. 97-92-I (Chancery Court for Davidson County, Tennessee) (the "Tennessee Action");

3.   Foodarama Supermarkets, Inc., et al. v. Allianz Insurance Company Group, et al., February Term 1998 No. 1138 (Court of Common Pleas Philadelphia County Civil Division, Pennsylvania);

4.   Bristol Hotel Asset Co., et al. v. Allianz Insurance Co., et al., Cause No. 97-2240-CIV-MORENO (S.D. Fla.)(the "Florida Federal Action") and any action severed therefrom;

5.    Bristol Hotel Management Corp., et al. v. Aetna Casualty & Surety Co. et al., Cause No. CL-97-7278-AH (The Circuit Court of The Fifteenth Judicial Circuit In And For Palm Beach County, Florida);

6.    El Chico Restaurants, Inc. v. The Aetna Casualty & Surety Co., et al., No. 97-RCCV-28 (Richmond County, Georgia);

7.    CR/PL Management Co., et al. v. Allianz Insurance Company Group, et al., No. 98 CH 01635 (Circuit Court of Cook County, Illinois);

8.    Hill-Behan Lumber Co. v. Aetna Casualty and Surety Co., et al., No. 982-00338 (Circuit Court of the City of St. Louis, Missouri);

9.    Hill-Behan Lumber Co. v. Hartford Insurance Company, et al., Case No. 98-117-WDS (S.D. Ill.) (upon removal by defendants); and

10.   Dal-Tile Corporation, et al. v. National Council on Compensation Insurance, Inc., et al., Case No. 311263 (Superior Court of the State of California, County of Riverside). The term the "Actions" also includes, but is not limited to, all actions severed from or consolidated with the "Actions."

B.    The Complaints filed in the Actions generally allege, among other things, that Hartford acting individually and in concert with the National Council on Compensation Insurance, Inc. (the "NCCI") and the other carriers named as defendants in the Actions (the "Insurer Defendants") deviated from filed and approved forms and rates (including, but not limited to, for the

purpose of recapturing residual market assessments outside of legal requirements) which caused insureds to suffer injury. The Complaints further allege, among other things, that such unlawful deviations were fraudulently concealed from the Plaintiffs and the Settlement Class Members by Hartford the NCCI, and the Insurer Defendants. The Actions allege liability as to the Subject Policies only, and the "Settlement Class" is also intended to include, but not be limited to, the putative classes pleaded in the Actions as of the Effective Date.

C.    To date, some or all of the Hartford Defendants, the NCCI, and/or other Insurer Defendants have made various motions to dismiss the Complaints filed in the Florida Federal Action, the Tennessee Action, and the New Jersey Action (the "Motions").   The Motions filed in the Florida Federal Action have been fully briefed and are under submission with the Court in that action.

D.    Hartford denies any wrongdoing whatsoever and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Hartford with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Hartford has asserted.   Hartford recognizes, however, that the litigation has been filed in conformity with Federal Rule of Civil Procedure 11, that the litigation is being voluntarily settled after advice of counsel, and that the terms of the settlement are fair, adequate, and reasonable.   This Stipulation shall not be construed or deemed to be a concession by any Plaintiff, Settlement Class Member, or their counsel of any infirmity in the claims asserted in the Actions.

E.   Plaintiffs' Counsel have conducted an investigation relating to the claims and the underlying events and transactions alleged in the Complaints. Plaintiffs' Counsel have analyzed the evidence adduced during negotiations and pretrial discovery and otherwise and have researched the applicable law with respect to the claims of Plaintiffs and the Settlement Class against the defendants in the Actions and the potential defenses thereto.

F.   Plaintiffs, by their counsel, have conducted discussions and arms' length negotiations with Hartford's Counsel with respect to a compromise and settlement of the Actions with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Settlement Class.

G.   Based upon their investigation and pretrial discovery as set forth above, Plaintiffs' Counsel and the Plaintiffs have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to Plaintiffs and the Settlement Class, and in their best interests, and have agreed to settle the claims released by this Settlement Agreement pursuant to the terms and provisions of this Stipulation, after considering (a) the substantial benefits that Plaintiffs and the Settlement Class Members will receive from settlement of the Actions and the claims asserted therein (b) the attendant risks, costs, burdens, uncertainties, and delays of litigation, and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

NOW THEREFORE, without any admission or concession on the part of Plaintiffs or the Settlement Class of any lack of

merit of the Actions whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by Hartford, and without any concession or agreement by Hartford that a contested class may or should be certified in any of the Actions or any other actions or proceedings, it is hereby further STIPULATED AND AGREED, by and among the Named Plaintiffs, the Hartford Settlement Sub-Class Representatives, the Settlement Class, the Hartford Settlement Sub-Class, and Hartford through their respective attorneys, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties hereto from the Settlement, that all Settled Claims (as defined below) as against the Released Parties (as defined below) shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions:

## CERTAIN DEFINITIONS

1. As used in this Stipulation, the following terms shall have the following meanings:

a. The "Court" shall refer to the Court in the Florida Federal Action until the claims against Hartford are severed, and then the "Court" shall refer to the Court in the Severed Florida Federal Action, as defined below.

b. "Settlement Class" and "Settlement Class Members" means, for the purposes of this Settlement only, all persons, groups, entities, associations, partnerships, corporations, companies, organizations, or employers that purchased, renewed, or were issued Subject Policies. The

"Settlement Class" and "Settlement Class Members" also include, but are not limited to, the "Hartford Settlement Sub-Class" and "Hartford Settlement Sub-Class Members" as those terms are defined below. Excluded from the Settlement Class are the defendants in the Actions and members of the NCCI; each of their parents, subsidiaries, and affiliates; any person controlled by any of these excluded persons; and the legal representatives, heirs, successors, executors, and assigns of any of these excluded persons. Also excluded from the Settlement Class are any putative Settlement Class Members that exclude themselves by filing a timely and proper request for exclusion in accordance with the requirements set forth in the Mail Notice to be approved by the Court.

c. "Subject Policies" means (1) retrospectively-rated, retrospectively-adjusted, loss-adjusted, retrospective overall agreements, retrospective rating agreements, LRARO, deductible, retention, and/or any loss sensitive workers' compensation or employers' liability insurance policies, programs, contracts, agreements, certificates, or insuring documents providing or relating to coverage within the United States, its possessions and/or its territories (including, but not limited to, the District of Columbia) for workers' compensation with an effective, renewal, or inception date from January 1, 1985 through and including May 7, 1998 and/or (2) any other general liability, automobile, other casualty policy, or other policy or contract (including, but not limited to, Foreign Voluntary Compensation, Longshoremen and Harborworkers, or Employers Liability Stop Gap coverage) written with, priced with, related to, or combined with the workers' compensation or employers' liability insurance policies, programs, contracts,

agreements, certificates, or insuring documents described in Paragraph 1(c)(1), with an effective, renewal, or inception date from January 1, 1985 through and including May 7, 1998.

d.   "Settlement Class Period" means, for the purposes of this Settlement only, the period of time from and including January 1, 1985 through and including May 7, 1998.

e.   "Hartford's Counsel" means the law firms that have entered appearances on behalf of Hartford in any of the Actions. All notices to Hartford's counsel will be sufficient if sent to David J. Healey, Esq. and Robert B. Lytle, Esq. at Arnold, White & Durkee, 750 Bering Drive, Houston, Texas 77057, Fax 713-787-1440, Phone 713-787-1400, who shall be referred to in this Settlement Agreement as "Hartford's Lead Counsel," with a copy to Mr. Harold Levy, Hartford Fire Insurance Company, Hartford Plaza, Hartford, Connecticut 06115, Fax 860-547-6959, Phone 860-547-3830.

f.   "Effective Date of Settlement" or "Effective Date" means the date upon which the Settlement contemplated by this Stipulation shall become effective, as set forth in Paragraph 30 below.

g.   "Hartford" or "Hartford Entities" includes Hartford Fire Insurance Company, Nutmeg Insurance Company, and the Hartford Financial Services Group, Inc. and each of their current and former subsidiaries, parents, and affiliates (sometimes referred to as the Hartford Insurance Group, Hartford Insurance Company, Hartford Group, or Hartford Fire and Casualty Group) including, but not limited to, First State Insurance Company, Hartford Accident & Indemnity Company, Hartford Casualty

Insurance Company, Hartford Insurance Company of Alabama, Hartford Insurance Company of Connecticut, Hartford Insurance Company of Illinois, Hartford Insurance Company of The Midwest, Hartford Insurance Company of The Southeast, Hartford Lloyds Insurance Company, Hartford Specialty Company, Hartford Underwriters Insurance Company, Hartford Underwriters Insurance Company (f/k/a New York Underwriters Insurance Company), New England Insurance Company, New England Reinsurance Corporation, New York Underwriters Insurance Company, Pacific Insurance Company, Ltd., Property & Casualty Insurance Company of Hartford, Sentinel Insurance Company, Ltd., Trumbull Insurance Company, Hartford Specialty Risk Services, Specialty Risk Services, Inc., Trumbull Services, Inc. and Twin City Fire Insurance Company.

h.   "Hartford Settlement Sub-Class" and "Hartford Settlement Sub-Class Members" means all Settlement Class Members that purchased, renewed or were issued Subject Policies from Hartford. All references to the "Settlement Class" or "Settlement Class Members" shall include, but not be limited to, the "Hartford Settlement Sub-Class" and the "Hartford Settlement Sub-Class Members."

i.   "Hartford Settlement Sub-Class Representatives" are all Named Plaintiffs that purchased, renewed or were issued Subject Policies from Hartford during the Class Period that are designated in the Order for Notice and Hearing, as defined below. All references to "Plaintiffs" or "Named Plaintiffs" shall also include the "Hartford Settlement Sub-Class Representatives."

j.   "Named Plaintiffs" or "Plaintiffs" means AFCO Industries, Inc; Alumax Inc., and its subsidiaries and

affiliates, Alumax Aluminum Corp., Alumax Foils, Inc., Alumax Mill Products, Inc., Alumax Materials Management, Inc. and, Alumax Technical Services, Inc.; American Association of Retired Persons, Inc.; American Color Graphics, Inc. f/k/a GBP Industries, Inc.; American Freightways, Inc.; Andrew Corporation; Bristol Hotel Asset Company assuccessor in interest to United Inns, Inc.; Burnham Service Corporation; Community Health Systems, Inc.; Corporate Express Delivery Systems -- Southwest, Inc.; CR/PL, LLC f/k/a CR/PL Limited Partnership and its members CR/PL, Inc. and CR/PL Management Co.; Dal-Tile Corporation; Eastern Air Lines, Inc.; Environmental Resources Management -- North Central, Inc.; ERM Enviroclean - North Central, Inc.; The ERM Group f/k/a Environmental Resources Management, Inc., and its subsidiaries, ERM, Inc., ERM Envirochem - West, Inc., and ERM West, Inc.; FFE Transportation Services, Inc.; Foodarama Supermarkets, Inc.; Hill-Behan Lumber Company; Judwin Properties, Inc.; LMS Holdings, LLC, and its wholly owned subsidiary, Film Transit, Inc.; Matria Healthcare, Inc. (for itself and as successor in interest to HealthDyne, Inc.); Melvin Simon & Associates, Inc., and its subsidiaries Simon DeBartolo Group, L.P., Simon Properties Fund, L.P., Simon Properties, Inc.; Metal Improvement Company, Inc.; Payless Cashways, Inc.; Specialty Restaurants Corporation (for itself and d/b/a Baby Doe's); Strick Corporation; U.S. Natural Resources, Inc.; Carlingswitch, Inc.; Cosco Industries, Inc.; Outback Steakhouse, Inc.; Paradyne Corporation f/k/a AT&T Paradyne Corporation; and such other entities or persons designated in the Order for Notice and Hearing, as defined below.

k.   "Parties" means the Named Plaintiffs, on behalf of themselves and the Settlement Class; the Hartford

Settlement Sub-Class Representatives, on behalf of themselves and the Hartford Settlement Sub-Class; and Hartford.

l.    "Mail Notice" means the notice to be sent by mail, as directed by the Court and agreed to by Hartford and Plaintiffs' Lead Counsel .

m.    "Order and Final Judgment" means the proposed final approval order and proposed Final Judgment, substantially in the form attached hereto as Exhibit "A".

n.    "Order for Notice and Hearing" means the preliminary approval order entered by the Court, substantially in the form to be agreed to by Hartford and Plaintiffs' Lead Counsel.

o.    "Plaintiffs' Counsel" means the law firms of Milberg Weiss Bershad Hynes & Lerach LLP; Weissman & Seeger LLP; Dodge, Fazio, Anderson & Jones, P.C.; Law Offices of Fred Misko, P.C.; Bell & James; Cohn, Lifland, Pearlman, Herrmann & Knopf, L.L.P.; Branham & Day; Miller, Faucher Cafferty & Wexler, L.L.P.; James J. Binns, Esq.; Danis, Cooper, Cavanagh & Hartweger, L.C.; Carey & Danis, L.L.C.; and Burt & Pucillo, L.L.P.

p.    "Plaintiffs' Lead Counsel" means the law firm of Milberg Weiss Bershad Hynes & Lerach LLP.

q.    "Publication Notice" means the summary notice of proposed Settlement and hearing for publication to be published as directed by the Court and agreed to by Hartford and Plaintiffs' Lead Counsel.

r. "Released Parties" and "Released Party" means the Hartford Entities and any and all of their past or present subsidiaries, parents, affiliates, successors, predecessors, officers, directors, managing general agents, representatives, employees, attorneys, investment advisors, auditors, and accountants; and also any person, firm, trust, corporation, officer, director or other individual or entity in which any Hartford Entity has a controlling interest or which is related to or affiliated with Hartford; and the legal representatives, heirs, executors, successors in interest, or assigns of Hartford. The terms "Released Parties" and "Released Party" shall also include all insurance agents and brokers and other persons or entities solely to the limited extent (i) their conduct is or was on behalf of or chargeable to Hartford or (ii) their liability was caused by or arises from acts or omissions of Hartford.

s. "Settled Claims" has the meaning set forth in Paragraph 10 below.

t. "Settled Hartford Claims" has the meaning set forth in Paragraph 17 below.

u. "Settlement" means the settlement contemplated by this Stipulation.

v. "Settling Defendants" or "Settling Defendant" means Hartford and the Released Parties.

w. "Non-Settling Defendants" or "Non-Settling Defendant" means a defendant or the defendants named in any of the Actions other than Hartford and the Released Parties.

x.   "Class Administrator" has the meaning set forth in Paragraph 5a below.

## Settlement Class and Settlement Sub-Class Certification

2.   a.   The Parties shall cooperate in moving the Court to sever all claims asserted against Hartford in the Florida Federal Action, and the Hartford Defendants shall consent to the filing of an amended complaint in the severed action (the "Amended Complaint"). The severed action shall be referred to as the "Severed Florida Federal Action."

b.   Hartford agrees for the purposes of the Settlement and its implementation that the Severed Florida Federal Action against the Hartford Defendants shall proceed as a class action for settlement purposes only as provided for in this Agreement.   Hartford shall cooperate with Plaintiffs' Counsel in seeking the Court's approval and certification of the Settlement Class and the Hartford Settlement Sub-Class for settlement purposes only (as each is defined herein).   The Parties agree this will not be used as evidence or otherwise used to argue that a contested class should be certified as to Hartford.

c.   In the event that the settlement is not approved by the Court or otherwise is not consummated for any reason, the Memorandum of Understanding of May 5, 1998 (the "MOU"), this Settlement Agreement, the Settlement, or the related negotiations, orders, judgments and papers shall not be offered in arguing that a contested or opposed class should be certified in the Actions or any other proceeding against any person or entity.   In any event, the MOU, this Settlement Agreement, the Settlement, and the related negotiations, orders, judgments, and

H 2704600(SS  S01  DOC)

13

papers shall not be construed or argued to be evidence that a contested class should be certified against Hartford or the Released Parties in any case.

**The Settlement Consideration From Hartford**

3.   a.   Hartford shall ratify all Subject Policies it has entered into with the Hartford Settlement Sub-Class Members, except to the extent the Hartford Settlement Sub-Class Member obtained the policy or contract by fraud, to the limited extent that Hartford agrees that it will not seek to recover, or recapture any discount below filed or approved rates other than as provided in the Subject Policies, and shall not deny coverage or otherwise seek to vary or avoid the terms of the Subject Policies on the basis that the Subject Policies do not comply with approved forms or filings.

b.   Hartford shall also pay the sum of Twelve Million Dollars ($12,000,000.00) (the "Settlement Fund") into an escrow account in accordance with the terms hereof.

c.   Hartford shall deposit and tender the Settlement Fund to an escrow agent and depository institution, to be mutually agreed upon by Hartford and Plaintiffs' Lead Counsel, within two (2) business days of establishment of an escrow account; provided, however, that interest shall begin to accrue on the Settlement Fund from May 20, 1998 at a rate of interest equal to the six (6) month Treasury bill rate and such interest shall be due and payable by Hartford into the escrow account up through and including the date the Settlement Fund is delivered into escrow.  The escrow agreement (the "Escrow Agreement") shall be in a form mutually agreeable to the Parties and the escrow

agent, and shall be consistent with this Settlement Agreement. Subject to the terms of this Settlement Agreement, after depletion of the Administration Fund, as defined in Paragraph 3h below, the escrow agent may promptly pay the costs to be actually incurred in providing notice to the Settlement Class from the Gross Settlement Fund and the escrow agent's expenses, if any, without further order of the Court.  No portion of the Gross Settlement Fund (as defined in Paragraph 3e below) may be distributed to the members of the Settlement Class or Plaintiffs' Counsel for any purpose, other than the payment of (i) the actual costs of notice to the Settlement Class and administration of the settlement in excess of the Administration Fund as provided in paragraph 7b below, and (ii) the payment of attorney's fees, costs and expenses awarded by the Court as provided for in paragraph 6 below, until after the Effective Date.  If the Court does not approve the Settlement, or if the Court's Order approving the Settlement is reversed, vacated  or modified on appeal in any material respect, or if Hartford or Plaintiffs' Lead Counsel voids or terminates the Settlement under the terms of the Settlement Agreement, or if the Settlement fails for any reason, then the Gross Settlement Fund and the Administration Fund (including all Interest on these funds)[1] will revert to and be paid over by the escrow agent to Hartford (with the exception of any Taxes (as defined below), escrow or bank fees and the cost of notice to the Settlement Class, if any, properly paid from the Administration Fund and the Settlement Fund under the terms of this Settlement Agreement).  Further, Hartford shall not be required to pay any additional monies because of any loss of the

---

[1]      The term "Interest" shall mean all interest, dividends, distributions, amounts or other income earned, accrued,  or derived from or on the applicable funds.

Gross Settlement Fund or the Administration Fund (including all Interest on such Funds). The Plaintiffs and all Settlement Class Members agree that they will not attempt to impress any lien on or otherwise attach or garnish the Gross Settlement Fund or the Administration Fund (including any Interest on these Funds), or otherwise seek to enjoin or stop their reversion to Hartford in the event that the Settlement is modified by a court in some material respect, voided, canceled, not approved or otherwise fails for any reason or in the event that all or any portion of the Gross Settlement Fund or the Administration Fund (including any Interest on these Funds) is otherwise required to revert to and be paid over to Hartford under any provision of this Settlement Agreement.

d.     Hartford shall have no obligation to assist in the distribution of the Settlement Fund, other than providing the Information as defined in Paragraph 8a below.

e.     The Settlement Fund and any Interest on the Settlement Fund shall be the "Gross Settlement Fund".

f.     The Gross Settlement Fund, net of any Taxes (as defined below) on the Interest thereof, shall be used to pay (i) any notice and administration costs referred to in Paragraph 7b hereof after depletion of the Administration Fund which has been established for the purpose of paying such costs, and (ii) any attorneys' fees, costs and/or expenses awarded by the Court as provided for in Paragraph 6.  The balance of the Gross Settlement Fund after the above payments shall be referred to as the "Net Settlement Fund," which shall be distributed as provided by this Settlement Agreement. The Escrow Agreement shall provide that the escrow agent shall from time to time, upon written

(                                                          (

authorization from Hartford and Plaintiffs' Lead Counsel, invest the Gross Settlement Fund held in escrow or specified portions thereof in segregated Treasury bills, or other similar instruments backed by the full faith and credit of the United States Government with a maturity specified in such written authorization, or in such other segregated instruments or funds as instructed in writing by Plaintiffs' Lead Counsel and Hartford, and shall collect and reinvest all Interest accrued thereon. Any funds held in escrow not invested as described above shall be held in a segregated interest-bearing bank account insured by the FDIC. The Parties hereto agree that the Gross Settlement Fund and the Administration Fund (including all interest on such funds), are intended to be a single Qualified Settlement Fund[2] within the meaning of Treasury Regulation § 1.468B-1, Section 468B of the Internal Revenue Code of 1986, as amended (the "Tax Code"), the Treasury Regulations promulgated pursuant thereto, and other applicable law and that the Escrow Agent (as such term is defined under the Escrow Agreement), as administrator of the Gross Settlement Fund and the Administration Fund (including all Interest on such funds) within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be responsible for filing tax returns for the Gross Settlement Fund and the Administration Fund (including all Interest on such funds) and paying from the Gross Settlement Fund and the Administration Fund (including all Interest on such funds) any Taxes owed with respect to the Gross Settlement Fund and the Administration Fund (or any Interest on these funds). Hartford agrees to provide promptly to the Escrow Agent the statement described in Treasury

---

[2] The Qualified Settlement Fund under the Tax Code shall be comprised of the Gross Settlement Fund and the Administration Fund and any Interest on these funds.

(                                                                    (

Regulation § 1.468B-3(e).   If for any reason the Gross Settlement Fund, or the Administration Fund or any Interest on such funds fail to qualify as a qualified settlement fund under Section 468B of the Tax Code and the Treasury Regulations promulgated pursuant thereto, including, but not limited to, Treasury Regulation § 1.468B-1 and other applicable laws or Hartford becomes liable for any taxes, costs, penalties, fees, causes of action, litigation, interest, losses, claims, demands, damages, or expenses related to the Gross Settlement Fund or the Administration Fund (or any Interest on such Funds), Hartford shall be reimbursed and indemnified from the Gross Settlement Fund and the Administration Fund (including any Interest on such funds), for any taxes, costs, causes of action, penalties, litigation, interest, losses, claims, demands, expenses, damages, reasonable attorneys' fees and expenses, or other liability suffered or incurred by Hartford, and the Escrow Agent shall seek any appropriate tax refunds that would assist in making Hartford whole.

g.    All (i) taxes on the Interest or principal of the Gross Settlement Fund and the Administration Fund, and (ii) expenses and costs incurred in connection with the taxation of the Gross Settlement Fund and the Administration Fund (including any Interest on such funds) (including, without limitation, expenses of tax attorneys and accountants) (collectively, "Taxes") shall be paid out of the Gross Settlement Fund and the Administration Fund, (including any Interest on such funds) shall be considered to be a cost of administration of the Settlement, and shall be timely paid by the Escrow Agent (as such term is defined under the Escrow Agreement) without prior Order of the Court.

h.   In addition to the payment of the Settlement Fund, within ten (10) business days of receiving written notice of preliminary Court approval of the Settlement and the proposed notice, Hartford shall pay $250,000.00 (the "Administration Fund") to the Escrow Agent to contribute to the cost of providing notice to the Settlement Class and administering the Settlement provided for herein.   The Administration Fund and any Interest earned thereon shall be invested according to the instructions of Plaintiffs' Lead Counsel.   Distributions from the Administration Fund shall be solely at the direction of Plaintiffs' Lead Counsel given to the Escrow Agent.   In the event the costs of notice and administration exceed the Administration Fund, such additional costs shall be paid out of the Gross Settlement Fund.   Hartford shall have no liability for any notice or administration costs beyond this $250,000 payment.

i.   Prior to the distribution of any portion of the Gross Settlement Fund to the Hartford Settlement Sub-Class Members, Hartford shall provide to the Escrow Agent and Plaintiffs' Lead Counsel a list of bills, debts, and other amounts arising out of or related to the Subject Policies that have been outstanding and owing for more than ninety (90) days as of May 5, 1998 which have been referred to Hartford's collection unit on or prior to that date and which remain unpaid as of the Effective Date, including, but not limited to, the amount owing by each such Hartford Settlement Sub-Class Member (the "Amount of the Debt").   Before any portion of the Gross Settlement Fund is distributed to any Hartford Settlement Sub-Class Member, the Amount of the Debt for each Hartford Settlement Sub-Class Member shall be deducted from such Hartford Settlement Sub-Class

Member's distribution from the Gross Settlement Fund and retained in escrow.

j.   At such time as agreed to by Hartford and Plaintiffs' Lead Counsel , Hartford shall send a letter via certified mail, return receipt requested, notifying each Hartford Settlement Sub-Class Member of the Amount of the Debt and granting such Hartford Settlement Sub-Class Member at least ninety (90)  days from the date such letter is mailed to such Hartford Settlement Sub-Class Member to investigate any such Amount of the Debt and informing it of its right to dispute such Amount of the Debt if, in fact, a bona fide dispute exists (the "Off-Set Letter").  The Off-Set Letter shall also notify any such Hartford Settlement Sub-Class Member of its rights under this subparagraph with respect to any disputed Amount of the Debt. The form of the Off-set Letter shall be prepared by Hartford subject to Plaintiffs' Lead Counsel's prior written approval with respect to the wording, content and forms thereof.  If within ninety (90) days of the mailing of the Off-Set Letter, the Hartford Settlement Sub-Class Member does not dispute the Amount of the Debt for purposes of this Settlement, the Amount of the Debt, up to the amount of the Hartford Settlement Sub-Class Member's distribution, shall be paid over to Hartford from the Gross Settlement Fund and shall be applied against the Hartford Settlement Sub-Class Member's bill, debt, or other amount outstanding.   The failure of a Hartford Settlement Sub-Class Member to dispute the Amount of the Debt for purposes of this settlement shall not be deemed or construed as an admission of the validity of any portion of the debt not offset against distributions under this Settlement Agreement.

k.   In the event the Hartford Settlement Sub-Class Member disputes all or part of the Amount of the Debt (the "Disputed Amount of the Debt"), and provides written certification that there is a bona fide dispute, its distribution, up to the Disputed Amount of the Debt,[3] shall remain in escrow until the dispute is resolved under one of the following two options:   (i) alternative dispute resolution, the type of such alternative dispute resolution to be mutually agreed upon by Hartford and such Hartford Settlement Sub-Class Member, or if they cannot agree, by the Court, and each party to the alternative dispute resolution shall bear its own costs, and the fees charged by the mediator or arbitrator shall be shared equally by the parties to the alternative dispute resolution (the "ADR Option") or (ii) the Disputed Amount of the Debt shall be reduced by $1.25 for every $1.00 that would otherwise have been distributed to such Hartford Settlement Sub-Class Member from the Gross Settlement Fund, and which amount shall then be paid to Hartford rather than the Hartford Settlement Sub-Class Member (the "Credit Option").[4]   This election shall be made by the

---

[3]   However, the Hartford Settlement Sub-Class Members' distribution from the Gross Settlement Fund, up to the undisputed portion of the Amount of the Debt, shall first be paid to Hartford.

[4]   The credit provided by the Credit Option shall only be used to satisfy the Disputed Amount of the Debt. For example, if a Hartford Settlement Sub-Class Member (a) is to receive a $9,000 distribution from the Gross Settlement Fund, (b) owes Hartford $10,000 on Subject Policies that is subject to the offset provision of ¶ 3(i)-(k), (c) has disputed the entire $10,000 debt, and (d) elects the Credit Option, then the Hartford Settlement Sub-Class Member will be able to eliminate its $10,000 disputed debt by subtracting $8,000 from its distribution from the Gross Settlement Fund ($ 8,000 x 1.25 = $10,000). Hartford will receive that $8,000 from the Gross Settlement Fund, and the Hartford Settlement Sub-Class Member will receive the remaining $1,000. Similarly, if a Hartford Settlement Sub-Class Member (a) is to receive a $10,000 distribution from the Gross Settlement Fund, (b) owes Hartford $100,000 on Subject Policies that is subject to the offset provision of ¶ 3 (i)-(k), (c) disputes the entire $100,000 debt, and (d) elects the Credit Option, then the Hartford Settlement Sub-Class Member will be able to reduce

Hartford Settlement Sub-Class Member.  If the affected Hartford Settlement Sub-Class Member elects neither the ADR Option nor the Credit Option within ninety (90) days of the mailing of the Off-Set Letter, then Hartford shall so notify Plaintiffs' Lead Counsel or their designated agent in writing and provide satisfactory proof of the mailing and receipt of the Off-Set Letter.  No more than thirty (30) days thereafter the Credit Option will be applied on behalf of any such Hartford Settlement Sub-Class Member.  Notwithstanding the foregoing, in the event that any Hartford Settlement Sub-Class Member is in litigation with Hartford as of the Effective Date, in respect of any such Disputed Amount of the Debt, any of the parties to such litigation may choose to continue such litigation as to the Disputed Amount of the Debt in lieu of the ADR Option or the Credit Option, in which case the Hartford Settlement Sub-Class Member's distribution from the Gross Settlement Fund, up to the Disputed Amount of the Debt, shall remain in escrow pending the resolution of such litigation.  The election to continue the litigation in lieu of the ADR option or the Credit Option must be made within ninety (90) days of Hartford's mailing of the Off-Set Letter.  No Settlement Class Member may dispute or challenge any Amount of the Debt or any other bill or debt on the basis of the Settled Claims.

---

its disputed debt by $12,500 ($10,000 x 1.25 = $12,500).  Since the Hartford Settlement Sub-Class Member's entire $10,000 distribution amount from the Gross Settlement Fund has been used for debt reduction, that amount ($10,000) will be paid to Hartford, and the Hartford Settlement Sub-Class Member will receive no distribution from the Gross Settlement  Fund.  Both of these examples assume that no litigation other than the Actions is pending concerning the Disputed Amount of the Debt.

## Notice

4.    a.    Plaintiffs' Lead Counsel shall provide notice to the Settlement Class and Hartford Settlement Sub-Class as directed by the Court.  Such notice shall at least include notice by mail, publication notice, and a website established for the purpose of providing notice.

b.    The notices referred to in paragraph 4(a) hereof shall be approved by the Court and shall conform to all applicable legal requirements.  In addition, the notices shall disclose that at least the following issues will be addressed at the final approval hearing:  (i) whether the Settlement Class and Hartford Settlement Sub-Class should be finally certified, including, but not limited to, whether the requisites of Fed. R. Civ. P. 23 have been met; (ii) whether the proposed settlement is fair, reasonable and adequate as to the Settlement Class and Hartford Settlement Sub-Class and whether it should be approved; (iii) whether Plaintiffs' Counsel, the Named Plaintiffs, and the Hartford Settlement Sub-Class Representatives have and will adequately represent their respective Class and Sub-Class; (iv) whether Plaintiffs' Counsel's application for an award of Attorneys' fees, costs, and expenses (and associated interest) from the Settlement Fund should be approved; and (v) whether Plaintiffs' Counsel's plan for distribution of the Settlement Fund should be approved.

## Administration

5.    a.    Plaintiffs' Lead Counsel shall retain one or more administrators, as deemed reasonably necessary by Plaintiffs' Counsel, to assist in the administration of this

Settlement (each a "Class Administrator" and together, collectively, the "Class Administrators") in connection with the administration of this Settlement and distribution of the Settlement Fund. The Class Administrator shall administer the Settlement under Plaintiffs' Lead Counsel's supervision and subject to the jurisdiction of the Court. Except as provided in ¶¶ 3(i)-(k) and 8a herein, Hartford shall have no responsibility for the administration of the Settlement, the Gross Settlement Fund, the Administration Fund or any Interest on these funds. Hartford shall have no liability to the Settlement Class in connection with such administration.

b. The Class Administrator shall perform such services as Plaintiffs' Lead Counsel may direct, subject to the jurisdiction of the Court. Among other things, the Class Administrator may assist with various administrative tasks, including, without limitation, (i) mailing or arranging for the mailing of the Mail Notice to certain Settlement Class Members, (ii) arranging for publication of notice as may be directed by the Court, (iii) establishing a website to be used for notice to the Settlement Class, (iv) handling returned mail not delivered to Settlement Class Members and making any additional mailings, (v) responding to inquiries from Settlement Class Members, (vi) assisting in the determination of distributions to Settlement Class Members, and (vii) assisting in the distribution of the proceeds of the Net Settlement Fund in accordance with the terms of this Settlement Agreement and the orders of the Court.

## Attorneys' Fees And Expenses

6. Plaintiffs' Counsel may apply to the Court for an award or awards from the Gross Settlement Fund of attorneys' fees

(                                          (

and reimbursement of costs and expenses (plus interest on such costs and expenses). Such attorneys' fees, costs, expenses, and associated interest as are awarded by the Court may be paid from the Gross Settlement Fund to Plaintiffs' Counsel three (3) business days after award by the Court or the date the Court enters an order finally approving the Settlement Agreement, whichever is later, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsels' obligation to make appropriate refunds or repayments to the Gross Settlement Fund plus accrued interest, if and when, as a result of any appeal, review, and/or further proceedings on remand or otherwise, or successful collateral attack, the Settlement, the Settlement Agreement, the Order and Final Judgment, the dismissal of the Actions, or the fee, expense, interest or cost award is reduced, modified, reversed or vacated or if and when the Settlement Agreement is voided or terminated or the Settlement fails for any reason. The maximum amount of fees to be sought by Plaintiffs' Counsel from the Settlement Fund shall be set forth at least  in the Mail Notice. Hartford shall not have any liability for any attorneys' fees, costs, expenses, or interest awarded by the Court.

**Administration Expenses**

7.  a.  After the Effective Date, Plaintiffs' Lead Counsel will apply to the Court, on notice to Hartford's Lead Counsel, for an Order (the "Class Distribution Order") approving, among other things, distributions from the Settlement Fund.

b.  Prior to the Effective Date, Plaintiffs' Lead Counsel may expend from the Administration Fund, without further

(                                              (

approval from the Court, such amounts as are necessary to pay Taxes on the Gross Settlement Fund and the Administration Fund, including, but not limited to, any Interest on these funds, and other costs and expenses associated with the administration of the Settlement, including, without limitation, the costs of identifying members of the Settlement Class and providing notice to the Settlement Class and the costs and fees of any banks or escrow agents arising from the Gross Settlement Fund and the Administration Fund (including any Interest on these funds). Such amounts shall include, without limitation, the actual costs of publication, printing and mailing notice establishing and maintaining a website, and the administrative expenses incurred and fees charged by the Class Administrator in connection with providing notice and administering distributions under the Settlement.

## Distribution To Settlement Class Members

8.   a.   Hartford shall cooperate in providing the following information, to the extent it is reasonably available, from the Hartford Defendants' computer systems, concerning the Subject Policies issued by Hartford:   (i) last known name and address; (ii) policy number of the Subject Policy; (iii) the effective dates of the Subject Policies; (iv) the premiums charged for the Subject Policies (v) the Hartford business unit underwriting the Subject Policy (e.g., SAID, CMS, etc.), (vi) the amount of dividends for the Subject Policies, and (vii) the rating plans used for the Subject Policy (e.g., deductible, retrospectively rated plan, dividend, etc.) (the "Information"). Hartford shall also provide such other reasonably available information as agreed to by the Parties as necessary for the

(                                              (

distribution of the Settlement Fund to Hartford Settlement Sub-Class Members.

b.   Hartford will make a good faith effort to correctly and accurately disclose the Information reasonably within its knowledge and ability.  If Plaintiffs' Counsel or any Hartford Settlement Sub-Class Member discovers, within twenty-four months of the Effective Date, that Hartford has made a material and intentional misstatement or omission with respect to the Information provided by Hartford as to a particular Hartford Settlement Sub-Class Member, Plaintiffs' Lead Counsel, on behalf of the Hartford Settlement Sub-Class Member, may petition the Court within twenty-four months of the Effective Date to set aside the release contained in this Settlement Agreement as to that Hartford Settlement Sub-Class Member to the extent affected by any such intentional and material misstatement or omission, and Hartford shall raise no defense of limitations or laches as to the Settled Claims of that particular Hartford Settlement Sub-Class Member whose release has been set aside under this provision if the Hartford Settlement Sub-Clas Member petitions to have the release set aside as to it within 24 months of the Effective Date.  If all or any portion of the release as to a particular Hartford Settlement Sub-Class Member is set aside, then that Hartford Settlement Sub-Class Member shall return any distribution it received from the Gross Settlement Fund to Hartford, plus Interest, and that Hartford Settlement Class Member shall receive none of the benefits of this Settlement.

c.   Plaintiffs' Counsel shall have the right to review pertinent aspects of the Hartford Defendants' computer databases used to generate the Information that are reasonably

(                                                    (

necessary to evaluate the reliability of the Information until twelve (12) months after the Effective Date.

## Administration of the Settlement Fund

9.    a.    Plaintiff's Lead Counsel, subject to Court approval, shall allocate a percentage of the Net Settlement Fund to the Hartford Settlement Sub-Class (the "Hartford Sub-Class Fund") and the remaining percentage of the Net Settlement Fund to the Settlement Class (the "Class Fund").    A plan of allocation shall be developed by Plaintiffs' Lead Counsel and submitted to the Court on notice to the Class.    Based upon the Information provided by Hartford, as set forth above, and other information, Hartford Settlement Sub-Class Members may receive a distribution from the Hartford Sub-Class Fund as proposed by Plaintiffs' Lead Counsel and as approved by the Court.    The Class Fund shall be distributed to the Settlement Class in accordance with a plan of allocation to be proposed by Plaintiffs' Lead Counsel and approved by the Court.

b.    Hartford shall have no right to challenge or dispute the allocation or distribution of the Net Settlement Fund to Settlement Class Members except (a) for the amount of any offset, distribution, or reduction in the Settlement Fund under ¶¶ 3(i)-(k), and 29; (b) to the extent such allocation or distribution affects any allocation or distribution to Hartford; or (c) as otherwise provided by this Settlement Agreement.

c.    Subject to Court approval, Plaintiffs' Lead Counsel, or the Class Administrator acting at their direction, shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund.    Hartford

(                                                    (

shall have no responsibility for the administration of the Settlement or disbursement of the Net Settlement Fund, Administrative Fund, or any Interest on these funds.

## Release

10. The Named Plaintiffs and all Settlement Class Members for themselves, their affiliates, predecessors, subsidiaries, successors and assigns (and their parents, principals, agents, and attorneys to the extent they assert or have asserted any claim on behalf of, derived from or arising from the Named Plaintiffs or the Settlement Class Members) (collectively, the "Releasing Persons"), agree to fully and finally ACQUIT, RELEASE, WAIVE AND DISCHARGE the Released Parties from and against any and all claims, demands, cross-actions, causes of action at law or in equity, whether statutory, contractual or in tort, or otherwise, as well as any other kind of action, known or unknown, claimed or possessed by any Releasing Persons, in whole or in part, or anyone claiming by through or under them, for or on account of or arising or growing out of, relating to or concerning in any way, whether directly or indirectly, any and all matters and dealings relating to (i) any claim that any contracts, rates, filings, pricing, dividends, forms, costs, premiums or charges relating to workers' compensation coverage and/or the Subject Policies were not or are not in accord with or did not or do not meet applicable legal requirements; (ii) any and all claims or issues that have been actually raised in the Actions as of the Effective Date; and (iii) any and all claims or issues that could have been or may be raised in the Actions, or otherwise, that any contracts, rates, filings, pricing, dividends, forms, costs, premiums, or charges

relating to workers' compensation coverage and/or the Subject Policies were not or are not in accord with or did not or do not meet applicable legal requirements. This release includes, but is not limited to, conspiracy claims, and all claims for actual, trebled, punitive or other damages or attorneys' fees, expenses or costs on a class-wide or individual basis, whether those claims are based on breach of contract, fraud, negligence, negligent misrepresentation, unjust enrichment, conspiracy to defraud, failure to disclose, negligent disclosure, improper disclosure, aiding and abetting, misrepresentation, breach of covenant of good faith and fair dealing, civil conspiracy, common enterprise, joint venture, constructive trust, violations of any applicable State's Insurance Code, violations of any state or federal antitrust law, consumer fraud, consumer protection or unfair trade practices laws, state or federal RICO, regulatory provisions or any other theories.[5] All of the claims released and/or waived by this Paragraph shall be collectively referred to

---

[5] This release also includes any claims related to the misrepresentation as legal fraud statute in Georgia, O.C.G.A. § 23-2-52; conspiracy to fix insurance rates in Georgia, O.C.G.A. § 33-9-37; the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372; the Georgia RICO Act, O.C.G.A. § 16-14-6; O.C.G.A. § 33-9-4; conspiracy to fix insurance rates in Missouri, R.S.Mo. § 416.010; charging of excessive rates in Missouri, R.S.Mo. §§ 287.950 and 379.470; the Missouri Deceptive Trade Practices Act, 407 R.S.Mo. and R.S.Mo. § 375.936; the Organized Crime Control Act of 1970, Pub. L. 91-452, § 901(a), 84 Stat. 941, 18 U.S.C. §§ 1962 (a), (b), (c) and (d); 18 U.S.C. § 1964(c); 18 U.S.C. § 1961; 18 U.S.C. § 1964; 18 U.S.C. § 1962; 18 U.S.C. § 1964(a); 18 U.S.C. § 2314; 18 U.S.C. § 1343; 18 U.S.C. § 1341; the California Unfair Business Practices Act, Ca. Business & Professions Code § 17200, et seq.; the California Insurance Code §§ 11658 and 11735; Cartwright Act, Ca. Business & Professions Code § 16700 et seq.; the Sherman Antitrust Act, 15 U.S.C. § 1; the Florida Antitrust Act, Fla. Stat. Ann. 542.18, et seq.; conspiracy to fix insurance rates in Illinois, 215 ILCS § 5/459; the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS §§ 505/1 and 505/2; the Illinois Antitrust Act, 740 ILCS § 10/1, et seq.; 215 ILCS §§ 5/456, 5/457, and 5/462b; the Tennessee Trade Practices Act, T.C.A. § 47-25-101, et seq.; the Tennessee Consumer Protection Act of 1977, T.C.A. § 47-18-101, et seq.; the New Jersey Antitrust Act, N.J.S.A. 56: 9-1, et seq.; and, the New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1, et seq.

as the "Released Claims" or the "Settled Claims." The Releasing Persons covenant not to sue the Released Parties with respect to any Settled Claims. Any other claims are reserved to the Named Plaintiffs and the Settlement Class and are not released. Upon final approval of the Settlement Agreement by the Court, each member of the Settlement Class who has not timely and properly excluded itself from the Settlement Class shall be deemed to have given this release.

11. Anything to the contrary notwithstanding, nothing in the release set forth in the preceding paragraph shall in any way affect any claim relating to coverage or the establishment of reserves for the claims of workers under the Subject Policies.

12. Furthermore, the foregoing release in no way affects any Named Plaintiff's and any other Settlement Class Member's rights, if any, under the proposed settlement agreement filed on or about March 4, 1998, in Cause No. 97-08264, entitled Highlands Insurance Company, et al. v. The Texas Department of Insurance, et al., in the 53rd Judicial District Court of Travis County, Texas.

13. The Releasing Persons shall be forever and permanently barred and enjoined from initiating, instituting, asserting, or prosecuting any Settled Claims against any of the Released Parties in the Severed Florida Federal Action, the Actions, any other State or Federal action, any administrative proceeding or any other action, forum, or proceeding, including, but not limited to, any action now pending or to be filed in State or Federal Court. The Releasing Persons stipulate that the Released Parties have no adequate remedy at law for the breach of

(                                              (

this provision, and this injunction shall be specifically enforceable by the Released Parties.

14. Each Settlement Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to the Settlement Class Member's claim.

15. Distributions from the Gross Settlement Fund in accordance with this Stipulation and the plan of allocation to be approved by the Court shall be deemed final and conclusive against all Settlement Class Members.  All Settlement Class Members, whether or not they are determined to have a claim hereunder or receive a distribution from the Net Settlement Fund, shall be bound by all of the terms of this Stipulation and the Settlement, including, but not limited to, the terms of the orders and judgments to be entered in the Severed Florida Federal Action and the other Actions and the releases provided for herein, and will be barred from bringing any action or proceeding against the Released Parties concerning the Settled Claims.

16. The Net Settlement Fund shall be distributed to Settlement Class Members in accordance with this Settlement Agreement and the plan of allocation to be approved by the Court only after the Effective Date.

17. Hartford releases any claim or cause of action that Hartford has or may have against any Named Plaintiff, Settlement Class Member, and their heirs, attorneys, executors, legal representatives, predecessors, successors, assigns, subsidiaries, affiliates, and parents relating to or arising from or in connection with the institution or prosecution of the Actions (the "Settled Hartford Claims").  Except as provided in

¶ 3a herein, all other claims, including, but not limited to, any claim based upon any insurance policy or other contract or agreement, are not released by Hartford and are reserved by Hartford.

## Waiver of Governmental Limitations on Releases

18.   **The provisions of any state, federal, municipal, local or territorial law or statute (including, but not limited to, that of the District of Columbia) providing in substance that releases shall not extend to claims, demands, injuries, and/or damages which are unknown or unsuspected to exist at the time the Settlement Agreement is executed and approved by the Court, are hereby expressly, knowingly and voluntarily waived by the Releasing Persons.   The Releasing Persons also expressly waive all rights under Section 1542 of the California Civil Code, realizing and understanding that Section 1542 provides as follows:**

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

## No Release as to Non-Settling Defendants

19.   Neither   this   Settlement   Agreement,   nor   any documents executed or covenant issued pursuant to this Settlement Agreement, shall be deemed, construed or intended as a release or dismissal by the Named Plaintiffs or Settlement Class Members of any Non-Settling Defendant from any claim, right or cause of action in any of the Actions except and only to the limited extent as expressly provided herein.   The Named Plaintiffs and

Settlement Class Members expressly reserve all remaining rights and claims against all Non-Settling Defendants, including all defendants named or to be later named in the Actions except for the Released Parties.   Notwithstanding anything to the contrary contained herein, NCCI shall not be deemed or construed to be released for any wrongdoing alleged in the Actions except solely with respect to (i) conduct on behalf of or chargeable to Hartford or (ii) liability caused by or arising from acts or omissions of Hartford.

## Preservation/Discovery

20.   a.   The Named Plaintiffs and the Settlement Class will not seek to include Hartford in any future document preservation orders.   The Named Plaintiffs, on behalf of themselves and the Settlement Class, shall move in the appropriate jurisdictions that Hartford be released, as of the Effective Date, from their obligations, if any, under the Document Preservation Order in the Tennessee Action or any other preservation order entered against Hartford or agreed to between the Parties in any of the Actions; provided that Hartford shall from and after the Effective Date until eighteen (18) months after the Effective Date continue to preserve all Information substantially in accordance with its own internal policies regarding information and document preservation which may be changed as reasonably necessary for the efficient conduct of Hartford's business.   The Named Plaintiffs and the Settlement Class also agree and covenant that after the Effective Date they (i) will not seek to enforce the Document Preservation Order in the Tennessee Action or any other preservation order, if any against Hartford, and (ii) will seek to cause the Tennessee

Document Preservation Order or any other preservation orders to be terminated as to Hartford.

b. As reasonably necessary, in order to implement and seek approval of this Settlement, Hartford agrees to produce additional documents and witnesses under its control upon proper notice of deposition and requests for documents served on Hartford's Lead Counsel, and without the necessity of subpoena or other Court order. Nothing herein shall preclude the Plaintiffs or the Settlement Class from seeking and pursuing third-party discovery from Hartford in any Action or any future action in accordance with applicable law. Hartford does not waive any privileges or other immunities, or objections to any discovery (including, but not limited to, objections as to burdensomeness), by making this Settlement Agreement, and all such objections will be preserved by sending the person requesting the discovery a letter or response objecting to the discovery sought prior to the time for appearance. In the event that Hartford objects to providing the discovery sought, Hartford shall not be required to seek protection from any Court prior to refusing to provide such discovery; rather, the Plaintiff or Settlement Class Member requesting the discovery shall petition the appropriate court to rule on Hartford's objections and to issue an order compelling discovery from Hartford. The Named Plaintiffs, on behalf of themselves and the Settlement Class, hereby agree to withdraw all of their previous discovery requests to Hartford in the Actions (including, but not limited to, Plaintiffs' First Request for Production of Documents from the Insurer Defendants and other discovery requests in the New Jersey Action, and Plaintiffs' First Request for Production of Documents from the Insurer Defendants and other discovery requests in the

Florida Federal Action to the extent they request discovery from Hartford), and Hartford shall have no obligation to answer, object, or otherwise respond to any such discovery requests heretofore served. In seeking discovery from Hartford, Plaintiffs' Counsel shall take reasonable steps to avoid imposing undue burden or expense on Hartford.

c. Other than orders entered by a court, all confidentiality agreements previously executed by the Named Plaintiffs and Hartford with respect to the settlement negotiations are rescinded and void *ab initio*. However, Hartford contends that the information, documents and materials that have been or will be provided by them are confidential and proprietary to Hartford and their customers., Such information, documents and materials shall be protected by the confidentiality agreement and order previously entered by the Court in the Florida Federal Action or by another mutually agreed upon confidentiality order.

## Stay of the Pending Actions

21. Within five (5) business days of the execution of this Agreement, the Named Plaintiffs agree to move to stay all claims against Hartford in the Actions, unless already stayed, until further order of the applicable courts. Moreover, the Named Plaintiffs agree that Hartford shall not be required to file any answers, pleadings, or other paper unrelated to the settlement in the Actions. Moreover, the Named Plaintiffs agree not to file any further cases against any Released Party asserting claims substantially similar to the claims asserted in the Actions unless the settlement is not consummated.

(                                      (

## Judgment Credit and Other Protections

22.   Should any person or entity obtain a judgment pursuant to a claim of contribution, indemnity or other similar theory against any Released Party based in whole and/or in part on the Settled Claims or any other claims in the Actions or other actions raising similar claims regardless of whether such judgment is founded on the Released Parties' own negligence, misconduct or other wrongful or intentional conduct or omission (a "Hartford Judgment"), then:

a.   The Named Plaintiffs and the Settlement Class agree to satisfy any Hartford Judgment by providing a credit against any judgment any of them have or may obtain against the party holding the Hartford Judgment, to an extent equivalent to the amount of the Hartford Judgment (up to Hartford's proportionate share of the liability), and shall thereby satisfy and effect a release of the Hartford Judgment.

b.   The Named Plaintiffs and Settlement Class agree that no cash disbursements shall be made to any Named Plaintiff or Settlement Class Member from any judgment obtained in any of the Actions or otherwise unless and until all then-existing Hartford Judgments have been satisfied and released as provided in the preceding paragraph.

23.   The Named Plaintiffs and the Settlement Class agree that in the event a subsequent settlement in any of the Actions or any similar actions provides a defendant settling that action with additional, greater or more advantageous rights regarding contribution, indemnity or other similar claims for the settlement of claims similar or analogous to the Settled Claims,

then Hartford, at its sole option, may claim and enforce the benefits of the provisions of any such subsequent settlement in regard to contribution, indemnity or other similar claims. If any subsequent settlement provides for a bar of contribution, indemnity or other similar claims against the defendant settling that action, then Hartford also shall be entitled to claim a similar or analogous bar at its sole option.

24.   The Named Plaintiffs and the Settlement Class agree to require each other defendant or other person settling in the Actions or any other similar actions brought by a Named Plaintiff or a Settlement Class Member to expressly release all claims for contribution, indemnity or other theory arising out of the subject-matter of the Actions or any similar actions, which the defendant or other person settling may have against any Released Party. In the event that any defendant or other person in the Actions or any similar actions has assigned or assigns any indemnity, contribution or other claims against the Released Parties to the Named Plaintiffs or the Settlement Class, such claims shall be deemed to be released by the Named Plaintiffs and the Settlement Class as against the Released Parties.

25.   The Named Plaintiffs and Plaintiffs' Counsel shall give Hartford written notice of any subsequent judgment and/or settlement in the Actions or any similar actions and provide Hartford an opportunity to review the settlement papers and/or judgments  within five (5) business days of the filing of a judgment and/or settlement contract. If the settlement contract is not required to be filed with the Court, the Named Plaintiffs and Plaintiffs' Counsel shall give Hartford written notice of the settlement and provide Hartford an opportunity to review the

(

settlement papers, within thirty (30) days of the execution of the settlement contract.

## Terms of Order for Notice and Hearing

26. Concurrently with their application for preliminary Court approval of the Settlement contemplated by this Stipulation, Plaintiffs' Counsel, with Hartford's Counsel's cooperation, shall apply to the Court for entry of an Order for Notice and Hearing, substantially in a form mutually agreed to by Hartford and Plaintiffs' Lead Counsel.

## Terms of Order and Final Judgment

27. If this Stipulation is approved by the Court, counsel for the Parties shall request that the Court enter an Order and Final Judgment, substantially in the form annexed hereto as Exhibit "A". Within ten (10) business days from the date the Court enters the Order and the Final Judgment or other Order and Final Judgment agreed to by the Parties, and any time for appeal or review has run, or if appealed or a writ of certiorari is granted, and not dismissed, the Order and Final Judgment is affirmed in all material respects, the Named Plaintiffs, individually and as representatives of the Settlement Class, shall execute and cause to be filed in the Actions an agreed order of dismissal with prejudice or similar order under applicable rules of the forums that will result in the dismissal of all claims against Hartford with prejudice. However, if the Settlement Agreement fails to become effective under paragraph 30 or the Settlement Agreement is terminated, and a new settlement is not reached, then the Parties shall jointly move to

vacate the dismissals and reinstate the Actions as to an, Hartford Entity previously named in that Action.

## Ratification of Subject Policies By The Hartford Settlement Sub-Class

28. All remaining and future premiums, charges, bills, or adjustments must be paid as agreed by the Settlement Class Members in accordance with the terms of the Subject Policies between any Settlement Class Member or Named Plaintiff and any of the Hartford Entities. The Hartford Settlement Sub-Class Members ratify and will cease to challenge the legality or enforceability of the Subject Policies with the Hartford Entities on the basis of the Settled Claims and will not refuse to pay any past, present or future premiums, charges, bills or adjustments owing or which may become owing on the Subject Policies on such basis.

## Requests for Exclusions

29. Hartford at its option may void and terminate the Settlement if the aggregate standard premium of the Hartford Settlement Sub-Class Members who submit timely and valid opt-out requests exceeds five percent of the aggregate standard premium for all Hartford Settlement Sub-Class Members. Further, Hartford, at its option, may void and terminate the Settlement if at least 250 Hartford Settlement Sub-Class Members or at least 2,500 Settlement Class Members, who are not Hartford insureds, submit timely and valid opt-out requests. In the event that any member of the Settlement Class, who is not a member of the Hartford Settlement Sub-Class, opts out of the Settlement Class in the manner provided by the Court, the Settlement Fund shall

(                                           (

not be reduced.  However, for each Hartford Settlement Sub-Class Member that opts out, the  Net Settlement Fund will be reduced by an amount equal to such Hartford Settlement Sub-Class Member's distribution from the  Net Settlement Fund as calculated by Plaintiffs' Lead Counsel or the Class Administrator and approved by the Court .  A sum equal to such reduction of the  Net Settlement Fund shall revert to and be paid over to Hartford.

**Effective Date of Settlement, Waiver or Termination**

30.  The "Effective Date" of this Settlement shall be the date when all of the following shall have occurred:

(a)  entry of the Order for Notice and Hearing in all material respects in the form agreed to by Hartford and Plaintiffs' Lead Counsel;

(b)  final approval by the Court of the Settlement, following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and entry by the Court of an Order and Final Judgment, in all material respects in the form set forth in Exhibit "A" annexed hereto, and the expiration of all times for appeal or review of such Order and Final Judgment, or, if any appeal is filed, or certiorari is granted, and not dismissed, after such Order and Final Judgment is upheld on appeal or review in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the Court enters an Order and Final Judgment in a form other than that provided above ("Final Alternative Judgment") and none of the Parties hereto elects to terminate this Settlement but rather the Parties agree to the Alternative Judgment, the entry by the Court

of such Final Alternative Judgment, and the expiration of all times for appeal or review of such Final Alternative Judgment, or, if any appeal is filed or certiorari is granted, and not dismissed, after such Final Alternative Judgment is upheld on appeal or review in all material respects and is no longer subject to review upon appeal or review by writ of certiorari; and

(c) dismissal with prejudice of all of the Named Plaintiffs and Settlement Class's claims against Hartford in the Actions.

31. Hartford or Plaintiffs' Lead Counsel shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto or their counsel within twenty (20) business days of their receiving written notice of (a) the Court's declining to enter the Order for Notice and Hearing in any material respect; (b) the Court's refusal to approve this Stipulation or any part of it; (c) the Court's declining to enter the Order and Final Judgment in any material respect; (d) the Order and Final Judgment being modified, vacated or reversed in any material respect by the Court of Appeals or the Supreme Court; (e) a Final Alternative Judgment being modified, vacated or reversed in any material respect by the Court of Appeals or the Supreme Court; or (f) any court refusing to dismiss the Named Plaintiffs and Settlement Class Members' claims against Hartford with prejudice in the Actions. Hartford shall also have the right to terminate the Settlement and this Stipulation under the conditions described in ¶ 29, hereof.

32. Except as otherwise provided herein, in the event the Settlement is terminated or fails to become effective for any reason, then the Parties to this Stipulation shall be deemed to have reverted to their respective status in the Actions as of May 5, 1998 (all deadlines in the Actions applicable to Hartford or Plaintiffs shall also be extended for a reasonable period as agreed to by the Parties), and the Parties shall proceed in all respects as if this Stipulation and any related orders had not been entered, and the Administration Fund and Gross Settlement Fund together with any Interest on these funds, (less any Taxes and the costs of administration of the Gross Settlement Fund and the Administration Fund and notice to the Settlement Class actually and properly incurred and paid or payable from the Gross Settlement Fund and the Administration Fund in accordance with this Settlement Agreement) shall be returned to Hartford. Moreover, any distributions from the Gross Settlement Fund and the Administration Fund (including any Interest on these funds) to the Named Plaintiffs, the Settlement Class, or Plaintiffs' Counsel, plus Interest, shall also be returned to Hartford.

## No Admission with Respect to Wrongdoing

33. This Stipulation, whether or not consummated, and any proceedings taken pursuant to it:

(a) shall not be offered or received against Hartford as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of the Hartford Entities of the truth of any fact alleged by Plaintiffs or the validity of any claim that had been or could have been asserted in any of the Actions or in any litigation, or the deficiency of any defense that has been or could have been

(                                              (

asserted in any of the Actions or in any litigation, or of any liability, negligence, fault, or wrongdoing of Hartford, or that a contested class of any kind should be certified;

(b)    shall   not   be   offered   or   received   against Hartford as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Hartford Entity;,

(c)    shall not be offered or received against the Plaintiffs and the Settlement Class as evidence of any infirmity in the claims of Plaintiffs and the Settlement Class, except as necessary to effectuate and enforce the provisions of this Stipulation and Settlement;

(d)    shall   not   be   offered   or   received   against Hartford as evidence of a presumption, concession or admission of any liability, negligence, fault or wrongdoing;

(e)    shall not in any way be referred to for any other reason as against any of the Parties to this Stipulation, in this or any other civil, criminal or administrative action or proceeding, other than as may be necessary to effectuate and enforce the provisions of this Stipulation and Settlement; and

(f)    shall not be construed against Hartford or the Plaintiffs and the Settlement Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

(                                                    (

34.   This Stipulation may be offered into evidence to effectuate and enforce   the provisions of this Stipulation and Settlement.

## Miscellaneous Provisions

35.   No ruling of any court or other body on (a) any application by Plaintiffs' Counsel for attorneys' fees, costs, expenses and/or interest from the Gross Settlement Fund, or (b) the allocation or distribution to any or all Settlement Class Members of the Net Settlement Fund shall affect or disturb in any way the finality or effectiveness of the Settlement or the Order and Final Judgment or constitute grounds for the termination, cancellation, voiding, or ineffectiveness of the Settlement or the Order and Final Judgment.

36.   Hartford's sole liability under this Settlement Agreement shall be the payment of the Settlement Fund and the Administration Fund and performing the Offset obligations of ¶ 3(i)-(k).

37.   All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

38.   The Parties shall use their best efforts, including all reasonable steps that may become necessary by order of the Court or otherwise, to effectuate the terms and purposes of the Settlement and to secure the approval thereof by the Court.

39.   Hartford Fire Insurance Company ("Hartford Fire") hereby agrees to make the payments required from Hartford under this Settlement Agreement, and Hartford Fire represents and

H 270460(5S S01 DOC)

warrants that at the time of such payments pursuant to the terms of this Settlement Agreement it was or is not insolvent nor did nor will the payment required to be made by or on behalf of it render Hartford Fire insolvent within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.  This representation and warranty is made by Hartford Fire and not by Hartford's Counsel.  In the event Hartford Fire fails for any reason whatsoever to make the payments required under this Settlement Agreement, Hartford Fire's obligations hereunder are unconditionally guaranteed, jointly and severally, by the other Hartford Entities.

40.  If a case is commenced in respect of Hartford Fire under Title 11 of the United States Code (Bankruptcy), (or a trustee, receiver or conservator is appointed under any similar law), and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of the Settlement Fund and the Administration Fund  to the escrow account or any portion thereof by or on behalf of Hartford Fire to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the escrow account by other Hartford Entities, then, at the election of Plaintiffs' Lead Counsel, the Parties shall jointly move the Court to vacate and set aside the Settlement Agreement and the Order and Final Judgment which Settlement Agreement  and Order and Final Judgment shall be null and void, and the Parties shall be restored to their respective positions in the litigation (including, but not limited to, the requirement that Plaintiffs' Counsel and the Settlement Class return all funds distributed to them from the Gross Settlement Fund and the Administration Fund,

and any Interest on these funds, to Hartford) as of the date a day prior to the date of this Settlement Agreement and any amounts paid into escrow (including Interest) as required under this Settlement Agreement shall be returned to Hartford Fire.

41. The Parties to this Stipulation and Agreement Of Settlement intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Settlement Class Members against the Released Parties with respect to the Settled Claims. Hartford also agrees not to assert in any forum that the litigation was brought in bad faith. The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's length in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

42. This Stipulation may not be modified or amended, nor may any of its provisions be waived except by a writing signed by all Parties hereto or their successors-in-interest.

43. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

44. The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees, costs and expenses to Plaintiffs' Counsel from the Gross Settlement Fund and enforcing the terms of this Stipulation.

(

45.  The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

46.  This Stipulation and its exhibits constitute the entire agreement among the Parties hereto concerning the Settlement of the Actions, and no representations, warranties, or inducements have been made by any Party hereto concerning this Stipulation and its exhibits other than those contained and memorialized in such documents, and no party is relying on any statement in entering this Settlement Agreement other than those set forth herein.

47.  This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Stipulation shall exchange among themselves original signed counterparts.

48.  This Stipulation shall be binding upon, and inure to the benefit of, the Parties and their successors and assigns.

49.  The construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law governs.

50.  This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by

counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

51    The Parties warrant and represent that their respective counsel executing this Stipulation and Settlement Agreement and any of the exhibits hereto have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

52.   Named Plaintiffs and Hartford agree to cooperate fully with one another in seeking Court approval of the Order for Notice and Hearing, the Stipulation, the Settlement Agreement and the Order and Final Judgment, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

(                                              (

DATED: June ____, 1998

                              For the Named Plaintiffs, on behalf
                              of themselves and the Settlement
                              Class, and the Hartford Settlement
                              Sub-Class Representatives, on behalf
                              of themselves and the Hartford
                              Settlement Sub-Class
                              MILBERG WEISS BERSHAD HYNES
                                & LERACH LLP

                              BY: _____
                                Melvyn I. Weiss
                                Richard H. Weiss
                                Deborah Clark-Weintraub
                              One Pennsylvania Plaza
                              New York, New York 10119
                              (212) 594-5300

                              **Lead Counsel for Plaintiffs, the
                              Settlement Class, the Hartford
                              Settlement Sub-Class
                              Representatives, and the Hartford
                              Settlement Sub-Class**

(                                                        (

DATED: June 22, 1998

For Hartford Defendants
ARNOLD, WHITE & DURKEE

By: _____
David J. Healey
Robert B. Lytle
750 Bering Drive
Houston, Texas 77057
(713) 787-1400

**Attorneys for Hartford Defendants**

(                                              (

DATED: June 22 1998

For Hartford Defendants

By:

Harold M. Levy
Associate General Counsel
Hartford Plaza
Hartford, Connecticut 06115
(860) 547-3830

H 270460(SS SUI DOC)

52

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. Mail to all counsel on the most recent Service List, this 23rd day of June, 1998.

BURT & PUCILLO, LLP

By: _____
MICHAEL J. PUCILLO, ESQ.
Florida Bar No. 261033
R. SCOTT PALMER, ESQ.
Florida Bar No. 220353
Esperante, Suite 300 East
222 Lakeview Avenue
West Palm Beach, FL 33401
Telephone:(561) 835-9400
Facsimile:(561) 835-0322

ATTORNEYS FOR PLAINTIFFS

(

(                                        (

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION**

```
-----------------------------------§
Alumax Inc., et al.                §
                                   §
              Plaintiffs           §
                                   §
-----------------------------------§
    v.                             §  CIVIL ACTION NO. 97-2240-
                                   §  CIV-MORENO
                                   §
Hartford Fire Insurance Company,   §
 et al.                            §
                                   §
              Defendants           §  MAGISTRATE JUDGE DUBÉ
-----------------------------------§
```

**FINAL ORDER GRANTING
SETTLEMENT CLASS CERTIFICATION,
FINAL APPROVAL OF THE SETTLEMENT
AGREEMENT WITH HARTFORD, DISMISSAL
WITH PREJUDICE OF ALL CLAIMS
<u>AGAINST HARTFORD, AND FINAL JUDGMENT</u>**

Hartford Fire Insurance Company, Nutmeg Insurance Company,
and the Hartford Financial Services Group, Inc. and each of their
current and former subsidiaries, parents, and affiliates
(sometimes referred to as the Hartford Insurance Group, Hartford
Insurance Company, Hartford Group, or Hartford Fire and Casualty
Group) including, but not limited to, First State Insurance
Company, Hartford Accident & Indemnity Company, Hartford Casualty
Insurance Company, Hartford Insurance Company of Alabama,

H 270411(5SNF01' DOC)

(                                                                        (

Hartford Insurance Company of Connecticut, Hartford Insurance Company of Illinois, Hartford Insurance Company of The Midwest, Hartford Insurance Company of The Southeast, Hartford Lloyds Insurance Company, Hartford Specialty Company, Hartford Underwriters Insurance Company, Hartford Underwriters Insurance Company (f/k/a New York Underwriters Insurance Company), New England Insurance Company, New England Reinsurance Corporation, New York Underwriters Insurance Company, Pacific Insurance Company, Ltd., Property & Casualty Insurance Company of Hartford, Sentinel Insurance Company, Ltd., Trumbull Insurance Company, Hartford Specialty Risk Services, Specialty Risk Services, Inc., Trumbull Services, Inc. and Twin City Fire Insurance Company ("Hartford" or the "Hartford Entities") entered into a Stipulation and Agreement of Settlement and its attachments, which are attached as Exhibit A to this Order and fully incorporated herein (the "Settlement Agreement"), with

_____ (the "Plaintiffs" or "Named Plaintiffs"), individually, and as representatives of the Settlement Class, which is defined below, and with

_____ (the "Hartford Settlement Sub-Class Representatives," who are among the Named Plaintiffs), individually and as representatives of the

H 270411(5SNF01' DOC)                              2

(                                                      (

Hartford Settlement Sub-Class, as defined below. After consideration of the Named Plaintiffs' and the Hartford Settlement Sub-Class Representatives' Motion for Final Approval of the Settlement Agreement and Final Certification of the Settlement Class and Hartford Settlement Sub-Class under Rule 23, and any responses, objections, evidence or comments and after full hearing, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.   This Court adopts and incorporates herein all terms and provisions of the Settlement Agreement which shall be treated as a part of this Order and Final Judgment. The Court finds that the Settlement Class meets all the requirements for certification under Federal Rule of Civil Procedure 23 and certifies the Settlement Class with respect to the causes of action alleged in the Second Amended Complaint in this action. The "Settlement Class" and "Settlement Class Members" are defined as, for the purposes of this Settlement only:

all persons, groups, entities, associations, partnerships, corporations, companies, organizations, or employers that purchased, renewed, or were issued Subject Policies. The "Settlement Class" and "Settlement Class Members" also include, but are not limited to, the "Hartford Settlement Sub-Class" and "Hartford Settlement Sub-Class Members" as those terms are defined below. Excluded from the Settlement Class are the

H 270411(5SNF01 DOC)                              3

(                                          (

defendants in the Actions, as that term is defined below, and members of the National Council on Compensation Insurance, Inc. (the "NCCI"); each of their parents, subsidiaries, and affiliates; any person controlled by any of these excluded persons; and the legal representatives, heirs, successors, executors, and assigns of any of these excluded persons. Also excluded from the Settlement Class are any putative Settlement Class Members that have excluded themselves by filing a timely and proper request for exclusion in accordance with the requirements set by this Court, and all such entities and persons are listed on attached Exhibit B. "Subject Policies" means (a) retrospectively-rated, retrospectively-adjusted, loss-adjusted, retrospective overall agreements, retrospective rating agreements, LRARO, deductible, retention, and/or any loss sensitive workers' compensation or employers' liability insurance policies, programs, contracts, agreements, certificates, or insuring documents providing or relating to coverage within the United States, its possessions and/or its territories (including, but not limited to, the District of Columbia) for workers' compensation with an effective, renewal, or inception date from January 1, 1985 through and including May 7, 1998 and/or (b) any other general liability, automobile, other casualty policy, or

H 270411(5SNF011 DOC)                     4

other policy or contract (including, but not limited to, Foreign Voluntary Compensation, Longshoremen and Harborworkers, or Employers Liability Stop Gap coverage) written with, priced with, related to, or combined with the workers' compensation or employers' liability insurance policies, programs, contracts, agreements, certificates, or insuring documents described above in paragraph 1(a), with an effective, renewal, or inception date from January 1, 1985 through and including May 7, 1998.

2.    The Court finds that the Hartford Settlement Sub-Class meets all the requirements for certification under Federal Rule of Civil Procedure 23 and certifies the Hartford Settlement Sub-Class with respect to the causes of action alleged in the Second Amended Complaint in this action. The "Hartford Settlement Sub-Class" and "Hartford Settlement Sub-Class Members" are defined as:

> all Settlement Class Members that purchased, renewed or were issued Subject Policies from Hartford.   All references to the "Settlement Class" or "Settlement Class Members" shall include, but not be limited to, the "Hartford Settlement Sub-Class" and the "Hartford Settlement Sub-Class Members."   "Settlement Class Period" means, for the purposes of this Settlement only, the period of time from and including January 1, 1985 through and including May 7, 1998.

3.    The Settlement Class and the Hartford Settlement Sub-Class, are CERTIFIED FOR SETTLEMENT PURPOSES ONLY, under Fed. R. Civ. P. 23 in this action.

(                                                    (

A.   This Order and Final Judgment (including, but not limited to, all findings herein) shall be void and of no force and effect and shall be without prejudice to either the Named Plaintiffs' or Hartford's rights under Fed. R. Civ. P. 23 and the Settlement Agreement if (1) this Order and Final Judgment is materially altered, reversed, vacated or voided by any court at the expiration of all appeal and review periods or (2) if the Settlement Agreement is terminated or voided under the terms of the Settlement Agreement.

B.   The Named Plaintiffs, as defined previously, are designated as class representatives of the Settlement Class.

C.   The Hartford Settlement Sub-Class Representatives, as defined previously, are designated as class representatives of the Hartford Settlement Sub-Class.

4.   Counsel for the Settlement Class and the Hartford Settlement Sub-Class are Milberg Weiss Bershad Hynes & Lerach LLP, One Pennsylvania Plaza, New York, New York 10119; Weissman & Seeger, L.L.P., 575 Lexington Avenue, New York, New York 10022; Law Offices of Fred Misko, Jr., P.C., Turtle Creek Centre, Suite 1900, 3811 Turtle Creek Blvd., Dallas, Texas 75219; Dodge, Fazio, Anderson & Jones, P.C., One Lincoln Centre, 5400 LBJ Freeway, Suite 800, Dallas, Texas 75240; Burt & Pucillo, LLP, Espearante, Suite 300 East, 222 Lakeview Avenue, West Palm Beach, Florida

33401; Bell & James, Post Office Box 1547, Augusta, Georgia 30903-1547; Cohn, Lifland, Pearlman, Herrmann & Knopf, L.L.P., Park 80 Plaza West-One, Saddle Brook, New Jersey, 07663; Branham & Day, 190 Fourth Avenue, North Suite 1910, Nashville, Tennessee 37219; Miller, Faucher, Cafferty & Wexler, L.L.P., 30 N. LaSalle Street, Suite 3200, Chicago, Illinois 60602; James J. Binns, Esq., Mellon Bank Center, 39th Floor, Philadelphia, Pennsylvania 19103; and Danis, Cooper, Cavanagh & Hartweger, L.C., 8182 Maryland Avenue, Suite 1400, St. Louis, Missouri 63015; Carey & Danis, L.L.C., 8182 Maryland Avenue, Suite 1400, St. Louis, Missouri 63105 (collectively, "Class Counsel"). Milberg Weiss Bershad Hynes & Lerach LLP is designated as "Lead Class Counsel."

5. The Court finds that the claims of the Named Plaintiffs are typical of the claims of the Settlement Class, and also that the claims of the Hartford Settlement Sub-Class Representatives are typical of the claims of the Hartford Settlement Sub-Class.

6. The Court also finds that the Named Plaintiffs and Class Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class, and that the Hartford Settlement Sub-Class Representatives and Class Counsel have and will fairly and adequately represent and protect the interests of the Hartford Settlement Sub-Class.

(a)   The claims of the  Named Plaintiffs are typical of the claims of the Settlement Class, and the Named Plaintiffs will fairly and adequately protect the interests of the Settlement Class in that, among other things: (i) the interests of the Named Plaintiffs and the nature of their alleged claims are consistent with those of the Settlement Class, (ii) there are no conflicts between or among the Named Plaintiffs and the Settlement Class Members, and (iii) the Named Plaintiffs and the Settlement Class Members are represented by qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated class actions.

(b)   The claims of the Hartford Settlement Sub-Class Representatives are typical of the claims of the Hartford Settlement Sub-Class, and the Hartford Settlement Sub-Class Representatives will fairly and adequately protect the interests of the Hartford Settlement Sub-Class in that, among other things: (i)   the   interests   of   the   Hartford   Settlement   Sub-Class Representatives and the nature of their alleged claims are consistent with those of the Hartford Settlement Sub-Class, (ii) there are no conflicts between or among the Hartford Settlement Sub-Class Representatives and the Hartford Settlement Sub-Class Members,   and   (iii)   the   Hartford   Settlement   Sub-Class Representatives and the Hartford Settlement Sub-Class Members are

(                                          (

represented by qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated class actions.

7.   The Court finds that there are questions of law and fact common to the members of the Settlement Class and the Hartford Settlement Sub-Class and that these common questions predominate over questions affecting only individual members of the Settlement Class and the Hartford Settlement Sub-Class.

8.   The Court finds that class adjudication of both the Settlement Class and the Hartford Settlement Sub-Class is superior to any other method for the fair and efficient adjudication of this controversy and that both the Settlement Class and the Hartford Settlement Sub-Class are so numerous that joinder of all members is impracticable. This Court has considered (a) the interests of members of the Settlement Class and Hartford Settlement Sub-Class in individually controlling the prosecution or defense of separate actions; (b) the impracticability and inefficiency of prosecuting or defending separate actions; (c) the extent and nature of any litigation concerning the controversy already commenced by or against members of the Settlement Class and Hartford Settlement Sub-Class; (d) the desirability of concentrating the litigation of the claims in this particular forum; and (e) the difficulties likely to be encountered in the management of this class action,

and the Court finds that the Settlement Class and Hartford Settlement Sub-Class should be certified.

9. The Settlement Class Members and the Hartford Settlement Sub-Class Members who have properly and timely followed the procedures set by this Court to opt out of the Settlement Class and Hartford Settlement Sub-Class are listed on Exhibit B hereto, and are hereby excluded from the Settlement Class and the Hartford Settlement Sub-Class. The Settlement Class and the Hartford Settlement Sub-Class are certified for settlement purposes only, and the certification of this class and sub-class and this Order and Final Judgment and all findings herein are without prejudice to Hartford's rights to oppose a contested class.

10. This Court finally approves the Settlement Agreement [and any amendments as filed before the hearing on final approval of the Settlement Agreement, held _____, 1998 **to be filled in here**.] The Court finds that the Settlement Agreement has been entered into in good faith, following arm's-length negotiations, is a result of non-collusive negotiation and was concluded only after Class Counsel had conducted substantial formal and informal discovery and had consulted independent experts about the issues raised by Plaintiffs' claims and the Settlement. The Court finds that the Settlement Agreement is

(

fundamentally fair, adequate and reasonable, comports with all the criteria set out in controlling authority, and is in the best interest of the Settlement Class and the Hartford Settlement Sub-Class. The Court also finds that the Settlement Agreement is fair, reasonable, and adequate from the perspective of all affected parties. The Court hereby finally APPROVES the Settlement Agreement.

11. Having considered, all relevant factors, this Court determines that the notice given of the Settlement Agreement, the Settlement, and the certification of the Settlement Class and Hartford Settlement Sub-Class and all other issues meets the requirements of due process, Federal Rule of Civil Procedure 23, the Rules of this Court, all applicable law, and the standards set out in this Court's Findings and Order Certifying A Class For Settlement Purposes, Appointing Lead Counsel For The Class, Directing The Issuance Of Notice To The Class, And Scheduling A Fairness Hearing. . The Notice provided for and given to the Settlement Class and the Hartford Settlement Sub-Class constitutes the best notice practicable under the circumstances, and included individual notice to all Settlement Class Members and Hartford Settlement Sub-Class Members who could be identified through reasonable effort, and fully complies with the notice

requirements of due process, Fed. R. Civ. P. 23, and all other applicable law.

12. All Named Plaintiffs, Hartford Settlement Sub-Class Representatives, Settlement Class Members, and Hartford Settlement Sub-Class Members, except the persons and entities listed on Exhibit B, shall be bound by all provisions of the Settlement Agreement and of this Order and Final Judgment. The Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

13. The Court also ORDERS that the Settlement Fund and Administrative Fund established by the Settlement Agreement shall be administered in accordance with the terms set out in the Settlement Agreement and Escrow Agreement, which are fair, reasonable and adequate .

14. The Settlement Agreement controls the terms of this Order and Final Judgment, and the Named Plaintiffs, the Settlement Class Members, the Hartford Settlement Sub-Class Representatives, the Hartford Settlement Sub-Class Members and Hartford have agreed to be so bound. Except as provided by the Settlement Agreement, the parties shall bear their own costs, expenses and attorneys' fees.

15. The Court is of the opinion that the Settlement Class and the Hartford Settlement Sub-Class are proper under Fed. R.

(

Civ. P. 23, including, but not limited to, Fed. R. Civ. P. 23(b)(3), that the Settlement Agreement is also proper under Fed. R. Civ. P. 23, and that all the requisite conditions have been satisfied under Fed. R. Civ. P. 23, the due process clause, and all controlling authority.

16. The Court hereby DISMISSES WITH PREJUDICE all claims in this action against the Released Parties.

17. The Court hereby concludes and orders that the Named Plaintiffs, the Hartford Settlement Sub-Class Representatives and all members of the Settlement Class and the Hartford Settlement Sub-Class (except those persons and entities listed on Exhibit B) and their affiliates, predecessors, subsidiaries, successors and assigns (and their parents, principals, agents, and attorneys to the extent they assert or have asserted any claim on behalf of, derived from or arising from the Named Plaintiffs, the Hartford Settlement Sub-Class Representatives, the Hartford Settlement Sub-Class Members, or the Settlement Class Members) (collectively, the "Releasing Persons"), have hereby ACQUITTED, RELEASED, WAIVED AND DISCHARGED the Released Parties, as that term is defined below, from and against any and all claims, demands, cross-actions, causes of action at law or in equity, whether statutory, contractual or in tort, or otherwise, as well as any other kind of action, known or unknown, claimed or

(

possessed by any Releasing Persons, in whole or in part, or anyone claiming by through or under them, for or on account of or arising or growing out of, relating to or concerning in any way, whether directly or indirectly, any and all matters and dealings relating to (i) any claim that any contracts, rates, filings, pricing, dividends, forms, costs, premiums or charges relating to workers' compensation coverage and/or the Subject Policies were not or are not in accord with or did not or do not meet applicable legal requirements; (ii) any and all claims or issues that have been actually raised in the Actions[1] as of the

---

[1] Plaintiffs have filed this action and the following actions (collectively, the "Actions") in the following courts:

1. Foodarama Supermarkets, Inc., et al. v. Allianz Insurance Co., et al., Docket No. L-3556-97 (Superior Court of New Jersey, Law Division: Morris County) (the "New Jersey Action");

2. Bristol Hotel Asset Co., et al. v. The Aetna Casualty and Surety Co., et al., Civil Action No. 97-92-I (Chancery Court for Davidson County, Tennessee) (the "Tennessee Action");

3. Foodarama Supermarkets, Inc., et al. v. Allianz Insurance Company Group, et al., February Term 1998 No. 1138 (Court of Common Pleas Philadelphia County Civil Division, Pennsylvania);

4. Bristol Hotel Asset Co., et al. v. Allianz Insurance Co., et al., Cause No. 97-2240-CIV-MORENO (S.D. Fla.)(the "Florida Federal Action") and any action severed therefrom;

5. Bristol Hotel Management Corp., et al. v. Aetna Casualty & Surety Co. et al., Cause No. CL-97-7278-AH (The Circuit Court of The Fifteenth Judicial Circuit In And For Palm Beach County, Florida);

6. El Chico Restaurants, Inc. v. The Aetna Casualty & Surety Co., et al., No. 97-RCCV-28 (Richmond County, Georgia);

7. CR/PL Management Co., et al. v. Allianz Insurance Company Group, et al., No. 98 CH 01635 (Circuit Court of Cook County, Illinois);

8. Hill-Behan Lumber Co. v. Aetna Casualty and Surety Co., et al., No. 982-00338 (Circuit Court of the City of St. Louis, Missouri);

9. Hill-Behan Lumber Co. v. Hartford Insurance Company, et al., Case No. 98-117-WDS (S.D. Ill.) (upon removal by defendants); and

10. Dal-Tile Corporation, et al. v. National Council on Compensation Insurance, Inc., et al., Case No. 311263 (Superior Court of the

(                                    (

Effective Date (as that term is defined in the Settlement Agreement); and (iii) any and all claims or issues that could have been or may be raised in the Actions, or otherwise, that any contracts, rates, filings, pricing, dividends, forms, costs, premiums, or charges relating to workers' compensation coverage and/or the Subject Policies were not or are not in accord with or did not or do not meet applicable legal requirements. This release includes, but is not limited to, conspiracy claims, and all claims for actual, trebled, punitive or other damages or attorneys' fees, expenses or costs on a class-wide or individual basis, whether those claims are based on breach of contract, fraud, negligence, negligent misrepresentation, unjust enrichment, conspiracy to defraud, failure to disclose, negligent disclosure, improper disclosure, aiding and abetting, misrepresentation, breach of covenant of good faith and fair dealing, civil conspiracy, common enterprise, joint venture, constructive trust, violations of any applicable State's Insurance Code, violations of any state or federal antitrust law, consumer fraud, consumer protection or unfair trade practices

---

State of California, County of Riverside). The term the "Actions" also includes, but is not limited to, all actions severed from or consolidated with the "Actions."

(                                              (

laws, state or federal RICO, regulatory provisions or any other theories.[2]  All of the claims released and/or waived by this Paragraph shall be collectively referred to as the "Released Claims" or the "Settled Claims."  The Releasing Persons are hereby deemed to have covenanted not to sue the Released Parties with respect to any Settled Claims.  Each Releasing Person is hereby deemed to have given this release.

18.  Anything to the contrary notwithstanding, nothing in the release set forth in the preceding paragraph shall in any way affect any claim relating to coverage or the establishment of reserves for the claims of workers under the Subject Policies. Furthermore, the foregoing release in no way affects any Named

---

[2]  This release also includes any claims related to the misrepresentation as legal fraud statute in Georgia, O.C.G.A. § 23-2-52; conspiracy to fix insurance rates in Georgia, O.C.G.A. § 33-9-37; the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372; the Georgia RICO Act, O.C.G.A. § 16-14-6; O.C.G.A. § 33-9-4; conspiracy to fix insurance rates in Missouri, R.S.Mo. § 416.010; charging of excessive rates in Missouri, R.S.Mo. §§ 287.950 and 379.470; the Missouri Deceptive Trade Practices Act, 407 R.S.Mo. and R.S.Mo. § 375.936; the Organized Crime Control Act of 1970, Pub. L. 91-452, § 901(a), 84 Stat. 941, 18 U.S.C. §§ 1962 (a), (b), (c) and (d); 18 U.S.C. § 1964(c); 18 U.S.C. § 1961; 18 U.S.C. § 1964; 18 U.S.C. § 1962; 18 U.S.C. § 1964(a); 18 U.S.C. § 2314; 18 U.S.C. § 1343; 18 U.S.C. § 1341; the California Unfair Business Practices Act, Ca. Business & Professions Code § 17200, et seq.; the California Insurance Code §§ 11658 and 11735; Cartwright Act, Ca. Business & Professions Code § 16700 et seq.; the Sherman Antitrust Act, 15 U.S.C. § 1; the Florida Antitrust Act, Fla. Stat. Ann. 542.18, et seq.; conspiracy to fix insurance rates in Illinois, 215 ILCS § 5/459; the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS §§ 505/1 and 505/2; the Illinois Antitrust Act, 740 ILCS § 10/1, et seq.; 215 ILCS §§ 5/456, 5/457, and 5/462b; the Tennessee Trade Practices Act, T.C.A. § 47-25-101, et seq.; the Tennessee Consumer Protection Act of 1977, T.C.A. § 47-18-101, et seq.; the New Jersey Antitrust Act, N.J.S.A. 56: 9-1, et seq.; and, the New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1, et seq.

Plaintiff's and any other Settlement Class Member's rights, if any, under the proposed settlement agreement filed on or about March 4, 1998, in Cause No. 97-08264, entitled <u>Highlands Insurance Company, et al. v. The Texas Department of Insurance, et al.,</u> in the 53rd Judicial District Court of Travis County, Texas.

19. "Released Parties" and "Released Party" means the Hartford Entities and any and all of their past or present subsidiaries, parents, affiliates, successors, predecessors, officers, directors, managing general agents, representatives, employees, attorneys, investment advisors, auditors, and accountants; and also any person, firm, trust, corporation, officer, director or other individual or entity in which any Hartford Entity has a controlling interest or which is related to or affiliated with Hartford; and the legal representatives, heirs, executors, successors in interest, or assigns of Hartford. The terms "Released Parties" and "Released Party" shall also include all insurance agents and brokers and other persons or entities solely to the limited extent (i) their conduct is or was on behalf of or chargeable to Hartford or (ii) their liability was caused by or arises from acts or omissions of Hartford.

17

(                                                    (

20. The Releasing Persons are hereby forever and permanently BARRED and ENJOINED from initiating, instituting, asserting, or prosecuting any Released Claims against any of the Released Parties in any state or federal action, the Actions, any administrative proceeding or any other action, forum, or proceeding, including, but not limited to, any action now pending or to be filed in state or federal court. This injunction is necessary to aid the jurisdiction of this Court and to protect and effectuate this Order and Final Judgment and the other judgments of this Court. Moreover, the Released Parties have no adequate remedy at law for the breach of this injunction, and this injunction shall be specifically enforceable by the Released Parties.

21. The Settlement Agreement, this Final Order and Final Judgment (including, but not limited to, all findings herein), and all papers related to the Settlement are not, and shall not in any event be, an admission by Hartford or any Settlement Class Member, or any other person or entity of any liability or wrongdoing whatsoever or that a contested class may be certified, and shall not be offered as evidence of any claimed liability or wrongdoing whatsoever of Hartford or to support the certification of a contested class in this or any other proceeding.

H: 270411(5SNF01' DOC)                                  18

22.   The Parties are directed to carry out their obligations under the Settlement Agreement forthwith.

23.   The administration and consummation of the Settlement Agreement shall be under the authority of the Court, and the Court retains jurisdiction over the parties to the Settlement Agreement and may enter additional orders to effectuate the fair and orderly administration of the settlement as may from time to time be appropriate.

24.   This Order is binding on ALL members of the Settlement Class and the Hartford Settlement Sub-Class.

25.   This is a final judgment.   Fed. R. Civ. P. 58.   The Court ORDERS that this Order and Final Judgment shall be recorded as a final judgment on the Clerk's docket, and all parties shall treat this Order and Final Judgment as a final judgment for all purposes, including appeal.   Without affecting the finality of this Order, this Court will retain jurisdiction over this final judgment to enforce its terms and to award attorneys' fees and expenses from the Settlement Fund as provided by the Settlement Agreement and to otherwise enforce and implement this Settlement. All other relief not granted herein is specifically denied with prejudice.

DONE this _____ day of _____, 1998.

H 270411(5SNF01' DOC)                     19

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE